IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DEMETRIC TWITTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 323-009 |
| | ) | |
| DAVE CHENEY and BEVERLEY MURRAY, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Plaintiff, currently incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, commenced the above-captioned civil rights case *pro se* and is proceeding *in forma pauperis* ("IFP"). Defendants filed a motion to dismiss, or in the alternative, a motion for summary judgment. (Doc. nos. 23-1, 23-2.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED** in **PART**, (doc. no. 23-1), Defendants' motion for summary judgment be **GRANTED**, (doc. no. 23-2), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

## I.    MOTION TO DISMISS

### A.    Background and Procedural History

Plaintiff initially named three Defendants, and because he is proceeding IFP, the Court screened his complaint. (See doc. nos. 1, 9-10.) On May 15, 2023, United States District Judge Dudley H. Bowen, Jr., dismissed Defendant TSP. (Doc. no. 13.) The Court allowed to

proceed Plaintiff's deliberate indifference claim against Defendants Dr. Cheney and Nurse Murray.  (Id.)   Defendants now move to dismiss, arguing Plaintiff failed to exhaust administrative remedies prior to filing his complaint.  (See doc. no. 23-1.)  Plaintiff did not respond to the motion, and it is therefore unopposed pursuant to Local Rule 7.5.

The complaint alleges that, in March 2022, Plaintiff fell while at work and hit his head on the concrete floor.  (Doc. no. 1, p. 7.)  Plaintiff injured his neck and needed surgery to remove bone fragments from the spinal column, which caused temporary paralysis for several days.  (Id.)  After the surgery, Plaintiff used a walker because of "balance and equilibrium issues."  (Id. at 10-11.)  Upon arrival at TSP, Defendants Cheney and Murray confiscated the walker due to no apparent medical or security purposes.  (Id.)  Defendants clearly saw Plaintiff struggling to ambulate.  (Id.)  Without the walker, it is virtually impossible for Plaintiff to travel any distance within the institution, such as to the cafeteria.  (Id.)  Plaintiff still has balance and equilibrium problems due to the nerve damage from his neck injuries.  (Id. at 10-11.)

After transfer to TSP, Plaintiff was scheduled to have an injection procedure performed on his neck to alleviate the pressure.  (Id. at 9-10.)  The procedure was medically necessary to "unlock" his left arm, which is virtually useless and in a sling.  (Id. at 10.)  Dr. Cheney informed Plaintiff the procedure would not be performed because the medical facility was five hours away.  (Id. at 10.)  Dr. Cheney never rescheduled the procedure.  (Id. at 12.)  The procedure was not discretionary.  (Id. at 11.)  Defendants took Plaintiff's pain medication and did not fill Plaintiff's other prescribed pain medication because it was a narcotic.  (Id. at 9-10.)  Plaintiff is in constant pain due to his neck injury, which causes sleep deprivation.  (Id. at 11.)

In support of their motion to dismiss, Defendants produced the TSP Handbook, Plaintiff's signed form acknowledging receipt of the handbook, copies of Plaintiff's two filed

grievances, a copy of the Georgia Department of Corrections ("GDC") Grievance Standard Operating Procedure ("SOP"), and an Affidavit of Custodian of Records from Vicki Judd asserting all provided documentation therein is true and accurate.  (See doc. no. 23, Exs. A-B, D-F.)

Plaintiff filed two grievances at TSP:  no. 345528 filed November 9, 2022, and no. 347321 filed December 22, 2022.  (Id. at Exs. D-E.)  In grievance no. 345528, Plaintiff questions why he has not received left arm medical care, complains of neck problems, asserts "they took my walker from me when I got down here," and "they don't give me anything for pain or nothing so please help me."  (Id. at Ex. E, pp. 1-2, 6.)  The grievance was denied because Plaintiff refused to be evaluated and was observed walking without the need for assistance or a device.  (Id. at 5.)  The investigation revealed that at his prior medical camp, the medical director stated Plaintiff did not use nor need a walker, the device he arrived with was severely deformed/altered, and Plaintiff was observed on the compound walking without need for assistance.  (Id. at 7.)  Plaintiff appealed this decision, and on January 19, 2023, his appeal was denied because the Office of Health Services clinical staff concluded medical personnel handled the case appropriately.  (Id. at 2-3.)

In grievance no. 347321, Plaintiff recounts his December 22, 2022 trip to the Dublin Pain Center where he received several shots in the neck and arm.  (Id. at Ex. D, pp 1, 5-6.)  The consulting physician prescribed pain medication and recommended that, if TSP would not provide the narcotics, Plaintiff needed to be transferred to a facility that could provide it because "the medication is needed."  (Id.)  The physician also said a walker was needed due to a lack of balance and leg swelling.  (Id.)  Plaintiff complains that Dr. Cheney denied the narcotics and did not provide a walker.  (Id.)  This grievance was denied because the

investigation revealed consulting physicians cannot order medications or require walkers, and Plaintiff never submitted a sick call request for alleged leg swelling.  (Id. at 1-4.)  Plaintiff did not file any appeal concerning the issues in grievance no. 347321.  (Id. at 1; doc. no. 1, p. 4.)

### B.    Discussion

#### 1.    The Legal Framework

Where, as here, defendants file a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendants' motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendants bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any

other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent

filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016).  Here, Plaintiff makes no allegation or arguments under the first and third situations.  To the extent Plaintiff argues he was allegedly told the Warden was the highest level appealable, the Court makes factual findings with respect to that allegation below.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotations omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  Johnson, 418 F.3d at 1159.

### 2.    The Administrative Grievance Procedure

The applicable administrative grievance procedure is GDOC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019.  (Doc. no. 23, Ex. F.)  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  PN 227.02 § IV(C).  The administrative remedies procedure commences with filing the original grievance with a counselor or through a kiosk or tablet.  PN 227.02 § IV(C)(1)(c-d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § IV(C)(1)(b).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  Id.  The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it.  Id. § IV(C)(1)(e)(i).  The grievance may be rejected, *inter*

*alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident.  <u>Id.</u> § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a one-time ten-calendar-day extension may be granted.  <u>Id.</u> § IV(C)(1)(f)(v).  If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. <u>Id.</u> § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause.  <u>Id.</u> § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  <u>Id.</u> § IV(C)(2)(e).  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  <u>Id.</u> § IV(C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal.  <u>Id.</u>

### 3.    Plaintiff's Failure to Exhaust

Plaintiff's complaint was filed in the Southern District of Georgia on January 31, 2023. (Doc. no. 1.)  Plaintiff filed two grievances at TSP:  no. 345528 filed November 9, 2022, and no. 347321 filed December 22, 2022.  (Doc. no. 23, Exs. D-E.)  Plaintiff appealed the decision in grievance no. 345528 and did not file an appeal concerning grievance no. 347321.  (<u>Id.</u>) Indeed, Plaintiff acknowledges in his complaint there is a grievance procedure at TSP and

claims that he filed a grievance concerning the issues in the instant lawsuit, however, Plaintiff did not appeal to the highest level possible because he "was informed that the warden was the highest level possible." (Doc. no. 1, pp. 3-4.)  Under step one of <u>Turner</u>, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate for either grievance and moves to step two. <u>See</u> <u>Turner</u>, 541 F.3d at 1082.

Moving to the second step, the Court does not find credible the excuse proffered by Plaintiff he "was informed that the warden was the highest level possible" concerning an appeal for grievance no. 347321. (Doc. no. 1, pp. 3-4.)  The prison grievance procedure is explained to an inmate when they enter the Georgia Prison System, and the complete procedure is available at any prison library. <u>Garcia v. Obasi</u>, 2022 WL 669611, at *3 (11th Cir. Mar. 7, 2022).  Further, Plaintiff's excuse is directly refuted by his appeal of grievance no. 345528, which was appealed on January 3, 2023—a mere twelve days *after* he initiated grievance no. 347321. (<u>See</u> doc. no. 23, Ex. D, p. 1; Ex. E, p. 1.)  There is no evidence Plaintiff attempted to alert prison officials he was trying to appeal or needed assistance in obtaining the necessary forms. (<u>See</u> <u>id.</u>; <u>see generally</u> doc. no. 1.)  Furthermore, Plaintiff did not attempt to request consideration of an untimely appeal for good cause. <u>Johnson</u>, 418 F.3d at 1152, 1158.

Moreover, Plaintiff and staff witnesses' signatures located on the TSP Orientation Video Acknowledgement Form, Offender Orientation Checklist, Orientation Verification Form, and Receipt of Inmate Handbook Form confirm Plaintiff received and was briefed on the inmate handbook as it pertains to filing grievances. (<u>See</u> doc. no. 23, Ex. A, pp. 1-4.)  The GDC inmate handbook applies to all inmates at any GDC prison, including TSP. <u>Timmons v. Seller</u>, 2016 WL 5109163, at *7 (S.D. Ga. Sept. 20, 2016) ("[U]pon admission to [the] GDC, prison officials provide an orientation to inmates on the grievance process, and the process is

outlined in the inmates' Orientation Handbook."); <u>Wilson v. Hall</u>, 2017 WL 3444748, at *2 (S.D. Ga. July 17, 2017) ("Telfair State Prison is operated by the Georgia Department of Corrections").  TSP Records Custodian Vicki Judd confirmed by sworn Affidavit that these documents are true, accurate, and correct copies.  (Doc. no. 23, Ex. A, p. 5.)

  Therefore, Defendants' motion to dismiss for failure to exhaust administrative remedies should be granted in part to the extent that Plaintiff's claims in the instant suit are those discussed in grievance no. 347321.  (Doc. no. 23, Ex. D.)  Such claims concern Plaintiff's scheduled injection procedure on his neck to alleviate pressure and "unlock" his left arm, the cancellation of the procedure and failure to reschedule, Plaintiff's December 22, 2022 trip to the Dublin Pain Center where the consulting physician recommended pain meditation and a walker, and Dr. Cheney's failure to provide Plaintiff with the suggested narcotics and walker.  (See <u>id.</u>; doc. no. 1, pp. 9-12.)  Because the record confirms Plaintiff did not exhaust his administrative remedies for this grievance, such claims are subject to dismissal.  See <u>Leal v. Ga. Dep't of Corr.</u>, 254 F.3d 1276, 1279 (11th Cir. 2001) (<em>per curiam</em>) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); <u>Higginbottom</u>, 223 F.3d at 1261.

  Because Plaintiff exhausted his administrative remedies as to claims in the instant suit discussed in grievance no. 345528, (doc. no. 23, Ex. E), against Dr. Cheney and Nurse Murray, the Court will discuss such claims in Defendants' alternative summary judgment portion of their motion below.  Such claims concern Defendants' confiscation of Plaintiff's walker and failure to refill Plaintiff's prescribed medications after arrival at TSP, and Defendants' failure to provide medication or treatment for Plaintiff's ongoing left arm/neck pain before November 9, 2022.  (See <u>id.</u>; doc. no. 1, pp. 7-10.)

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    Background and Procedural History

On November 29, 2023, Defendants timely filed their motion to dismiss and motion for summary judgment.  (Doc. no. 23.)  The Clerk issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. no. 24.)  Plaintiff, however, did not file any response to the summary judgment motion. The Court again reiterated the consequences of a summary judgment motion and extended Plaintiff's time to file any opposition to the motion.  (Doc. no. 26.)  Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

In accordance with Local Rule 56.1, Defendants submitted a Statement of Material Facts ("SMF") in support of their summary judgment motion.  (Doc. no. 23-1.)  Because Plaintiff did not file a response, the Court deems admitted all portions of Defendants' statement having evidentiary support herein, and not otherwise contradicted by the record.  See Fed. R. Civ. P. 56 (requiring citations to particular parts of materials in record, and affidavits or declarations used to oppose summary judgment motion made on personal knowledge, set out facts admissible in evidence, and show competency to testify); see Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' statements of material fact admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objection to statement).

Regardless, this does not automatically entitle Defendants to summary judgment because as the movants, Defendants continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." <u>Reese v. Herbert</u>, 527 F.3d 1253, 1268 (11th Cir. 2008); <u>see also</u> <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact." <u>Mann</u>, 588 F.3d at 1303.

### B.    Undisputed Material Facts

Plaintiff was transferred to TSP on October 13, 2022. (SMF ¶ 1.) At his intake assessment the same day, Plaintiff was told he would not receive Tylenol #3 and Percocet because there was no current order for those medications in his medical chart. (<u>Id.</u> at ¶ 4.) Plaintiff got up, walked out of the room, stated he "did not have to take this," and did not complete a patient intake packet or medical evaluation. (<u>Id.</u>; doc. no. 23, Ex. C.) Because Plaintiff walked out, Nurse Murray could not complete the medical evaluation and discontinued his current medications, none of which were Tylenol #3, Percocet, or other narcotic pain medication. (SMF ¶ 5; doc. no. 23, Ex. C, pp. 3-6, 63-66.)

While previously housed at Phillips State Prison ("PSP"), Plaintiff received a prescription for Tylenol #3 on September 28, 2022, with instructions to take two tablets by mouth twice a day as needed for only ten days. (SMF ¶¶ 13-14; doc. no. 23, Ex. C, pp. 65-68.) He completed this prescription prior to his transfer to TSP and never received a refill order. (<u>Id.</u>) Also while housed at PSP, Plaintiff received his last prescription for Percocet on May 11, 2022, with instructions to give one tablet by mouth twice a day as needed for only four days. (SMF ¶ 15; doc. no. 23, Ex. C, pp. 65-68.) He also completed this prescription prior to his transfer to TSP and never received a refill order. (<u>Id.</u>)

On October 17th, Nurse Murray planned to see Plaintiff after he submitted a sick call request, but Plaintiff's dorm was flooded, and he could not be safely brought to medical. (SMF ¶ 6; doc. no. 23, Ex. C, pp. 6-7.) On October 19th, Dr. Cheney saw Plaintiff for an extensive medical evaluation. (Id.) Plaintiff claimed to have been hospitalized for three or four months after cervical spine surgery, but his medical records show he had only been hospitalized for ten days from March 13 to March 23, 2022. (SMF ¶¶ 7-8; doc. no. 23, Ex. C, pp. 11-13, 73.) At this visit, Plaintiff would not allow a meaningful left upper extremity exam and inhibited Dr. Cheney's efforts to test Plaintiff's range of motion. (SMF ¶ 28; doc. no. 23, Ex. C, p. 12.)

Dr. Cheney noted Plaintiff was able to walk on his own with an altered gait and contacted PSP to determine if Plaintiff was prescribed a walker while housed there or if Plaintiff received injections in the shoulder and spine for pain management. (SMF ¶¶ 9-10, 25; doc. no. 23, Ex. C, pp. 11-12, 14.) Plaintiff did not have a walker but did receive the injections. (Id.) Moreover, while at TSP, Plaintiff was observed ambulating on his own without difficulty by medical staff and after a physical therapy appointment on November 8th, the physical therapist also noted Plaintiff ambulated "independently and safely." (SMF ¶¶ 11-12; doc. no. 23, Ex. C, pp. 3, 7, 18-19, 36, 39.) Plaintiff had physical therapy on November 29th where the therapist recommended physical therapy two times a week for six weeks. (SMF ¶¶ 35-37; doc. no. 23, Ex. C, pp. 18-19, 36.)

On October 21st, Plaintiff was seen by medical and refused to go to the emergency room for additional evaluation because they "won't give [him his] walker back!" (SMF ¶ 16; doc. no. 23, Ex. C, p. 14.) On November 7th, Plaintiff received a chronic care initial visit and noted his pain was only a two out of ten. (SMF ¶ 31; doc. no. 23, Ex. C, p. 17.) On November 8th, Dr. Cheney ordered an urgent comprehensive evaluation with Rehab Advantage & Sports

Medicine in Dublin, Georgia, to test Plaintiff's motor capabilities, the extent of the shoulder injury, and advice regarding next steps.  (SMF ¶¶ 32-33; doc. no. 23, Ex. C, pp. 18-19, 23.)  Dr. Cheney noted that he did not have a lot of Plaintiff's medical records and was trying to request them.  (Doc. no. 23, Ex. C, p. 18).

On November 2nd and 9th, Plaintiff submitted medical requests and Nurse Murray treated Plaintiff for neck pain.  (SMF ¶¶ 17-18; doc. no. 23, Ex. C, pp. 15-16, 20-22.)  Plaintiff complained of neck pain during his November 18th visit with Nurse Murray and was prescribed Naproxen 500mg to be taken twice a day for one hundred eighty days.  (SMF ¶¶ 19, 34; doc. no. 23, Ex. C, pp. 24-26.)   Nurse Murray also prescribed medicine for a urinary tract infection and ordered a consult with a pain management clinic.  (Id.)

Plaintiff was treated by Nurse Murray for neck pain again on November 22nd and December 15th and received treatment on December 22nd at a pain management clinic.  (SMF ¶¶ 20-23; doc. no. 23, Ex. C, pp. 27-35, 37-40; Ex. D, pp. 1, 3, 5.)  Prior to initiating the instant suit, Plaintiff had twelve physical therapy appointments over eight weeks, and he also received injections at a pain clinic to assist with his neck and arm issues.  (SMF ¶¶ 38-41; doc. no. 23, Ex. C, pp. 39, 50-61.)  The case note entries reflect no complaints from Plaintiff regarding his treatment by Dr. Cheney and Nurse Murray.  (Doc. no. 23, Ex. G.)

## C.   Discussion

### 1.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual

dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Federal Rule Civil Procedure 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### 2.  Deliberate Indifference to a Serious Medical Need

To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove that:  (1) he had a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).  To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  To satisfy the subjective component, "a plaintiff must establish that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than gross negligence."  Johnson v. Lewis, No. 20-10150, 2023 WL 6613722, at *5 (11th Cir. Oct. 11, 2023) (citing Wade v. McDade, 67 F.4th 1363, 1366 (11th Cir. 2023), *vacated, reh'g granted*, No. 21-14275, 2023 WL 6613842 (11th Cir. Oct. 11, 2023)); see also id. at n.2 (recognizing that Eleventh Circuit "cases say both that the standard is 'more than mere negligence' and that it is 'more than gross negligence'" and applying the gross negligence standard).

Furthermore, "not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'"  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999).  The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good."  Harris v. Thigpen, 941 F.2d 1495, 1510 (11th

Cir. 1991) (quoting <u>Brown v. Beck</u>, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1363-72 (11t Cir. 1990) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); <u>Harris</u>, 941 F.2d at 1505.

The Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference.  <u>See</u> <u>Smith v. Fla. Dep't of Corr.</u>, 375 F. App'x 905, 910 (11th Cir. 2010).   Furthermore, the Court should not second-guess medical judgments. <u>Wallace v. Sheriff</u>, 518 F. App'x 621, 622-23 (11th Cir. 2013); <u>Smith</u>, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

### 3.   Defendants are Entitled to Summary Judgment Because the Undisputed Facts Show Defendants Did Not Act With Deliberate Indifference, And No Reasonable Juror Could Disagree

The Court need not determine whether the evidence available concerning Plaintiff's past cervical spine surgery and subsequent neck pain satisfies the objective component of constituting a serious medical need because Defendants clearly did not act with deliberate indifference with regard to Defendants' treatment after transfer to TSP, the subjective component.  In order to show deliberate indifference, Plaintiff must at least show Defendants knew were subjectively aware of a serious risk to Plaintiff's health that they disregarded by acting in a manner that constituted "more than mere negligence."  <u>Melton</u>, 841 F.3d at 1223. The ample evidence proffered by the defense, which Plaintiff has not disputed, establishes Defendants were not deliberately indifferent in taking away his walker, promptly treating his

pain, and providing additional subsequent treatment.

Plaintiff contends Defendants violated his rights when they took away his walker after he arrived at TSP.  (See generally doc. no. 1.)  However, as is clear from the record, Dr. Cheney conducted ample research into whether Plaintiff was previously prescribed a walker by a medical doctor or if he used a walker while housed at PSP.  (See generally doc. no. 23.)  Plaintiff also walked out of his initial visit and was repeatedly observed ambulating with no issues by TSP medical staff and his physical therapist.  (Id. at Ex. C, pp. 3, 7, 36, 39.)  "Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment."  Howard v. Memnon, 572 F. App'x 692, 695 (11th Cir. 2014) (per curiam) (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)); see also Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ("[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial.").

Moreover, the record indisputably establishes that Plaintiff received prompt and frequent treatment in the months after he arrived at TSP.  (See generally doc. no. 23, Ex. C.)  Plaintiff asserts he did not receive required pain medication after he arrived, however, Plaintiff had no existing order for Tylenol #3 or Percocet in his medical chart nor did he complete the initial medical evaluation.  (Id.)  Because Plaintiff chose to leave, Nurse Murray could not complete the medical evaluation and discontinued other current medications.  (SMF ¶ 5; doc. no. 23, Ex. C, pp. 3-6, 63-66.)  Indeed, Plaintiff provided no records to show he required this specific pain medication.  (See doc. no. 1.)

During medical visits for neck pain from October 2022 to January 2023, both Nurse Murray and Dr. Cheney ordered additional evaluations and treatment for Plaintiff including

but not limited to: pain medication, physical therapy, injections, and chronic pain management. (<u>See</u> doc. no. 23, Ex. C.) Thus, the indisputable evidence of record shows that Defendants did not intentionally deny or were deliberately indifferent to Plaintiff's serious medical needs. On the contrary, reasonable jurors could only find that Defendants properly treated Plaintiff and engaged in multiple ways to promptly address and treat Plaintiff's complaints and to provide him with continuous medical care.

Therefore, Plaintiff's claim fails because no reasonable juror could find Defendants were deliberately indifferent. Moreover, Plaintiff does not offer any evidence he was injured by Dr. Cheney or Nurse Murray's acts or omissions with respect to the course of treatment after he arrived at TSP in October 2022 or in the decision to take his walker that no medical provider had mandated at that time. <u>See</u> <u>Cannon v. Corizon Med. Servs.</u>, 795 F. App'x 692, 698 (11th Cir. 2019) (<i>per curiam</i>); <u>see also</u> <u>Whitehead v. Burnside</u>, 403 F. App'x 401, 404 (11th Cir. 2010) (<i>per curiam</i>) (explaining prisoner plaintiff's "personal belief regarding the severity of his injury is not sufficient to overcome the medical opinions" of record and mere difference of opinion as to appropriate treatment for injury, absent any evidence to refute contemporaneous medical records regarding treatment, are insufficient to avoid summary judgment).

In sum, the crux of Plaintiff's claim is that he believes Dr. Cheney and Nurse Murray should have given him the requested pain medications and not taken his walker after he arrived at TSP. (<u>See</u> doc. no. 1; doc. no. 23, Ex. E.) However, as explained above and repeatedly applied in the Eleventh Circuit:

> A plaintiff cannot establish deliberate indifference simply by second guessing the conclusions reached by a prison medical official in the exercise of his medical judgment. Indeed, "the question of whether governmental actors

should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

<u>Bismark v. Fisher</u>, 213 F. App'x 892, 896 (11th Cir. 2007) (*per curiam*); <u>see also</u> <u>Butler v. Prison Health Servs., Inc.</u>, 294 F. App'x 497, 499 (11th Cir. 2008) (*per curiam*) (same). Indeed, the Court should not second-guess Dr. Cheney and Nurse Murray's medical judgments, particularly where, as in this case, an inmate's health concerns received significant and frequent medical attention. <u>See</u> <u>Wallace v. Sheriff</u>, 518 F. App'x 621, 622-23 (11th Cir. 2013) (*per curiam*). In sum, Plaintiff cannot meet his burden of proof to show Dr. Cheney and Nurse Murray acted with deliberate indifference, thus, Defendants are entitled to summary judgment.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED** in **PART**, (doc. no. 23-1), Defendants' motion for summary judgment be **GRANTED**, (doc. no. 23-2), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED AND RECOMMENDED this 5th day of March, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA